Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3496 | **DATE** | 11/18/2004 |
| **CASE TITLE** | Murphy vs. Murphy | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, Counts I and III are voluntarily withdrawn by the plaintiff. The defendant's motion to dismiss is denied. Enter Memorandum Opinion and Order. Defendant's answer to the complaint is due by 12/16/04. Parties are directed to exchange Rule 26(a)(1) disclosures by 12/16/04. Status hearing set for 1/19/05 at 9:00 a.m. for scheduling for trial.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 2 2 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 10 |
| | Copy to judge/magistrate judge. | | | |
| MF | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARYL MURPHY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| EDDIE MURPHY; EDDIE MURPHY ) | |
| PRODUCTIONS, INC., a California corporation; ) | |
| LARRY WILMORE; STEVE TOMPKINS; ) | |
| RON HOWARD; TONY KRANTZ; BRIAN GRAZER; ) | |
| TOM TURPIN; WILL VINTON; WARREN BELL; ) | No. 04 C 3496 |
| WILL VINTON STUDIOS, INC., an Oregon ) | |
| corporation; IMAGINE TELEVISION, a California ) | Judge John W. Darrah |
| general partnership; TOUCHSTONE TELEVISION ) | |
| PRODUCTIONS, LLC; FOX BROADCASTING ) | |
| COMPANY, INC., a Delaware corporation; and ) | DOCKETED |
| WARNER BROS. TELEVISION, A DIVISION OF ) | NOV 2 2 2004 |
| TIME WARNER ENTERTAINMENT ) | |
| COMPANY, L.P., a Delaware limited partnership, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Daryl Murphy ("D. Murphy"), filed suit against Defendants under the Copyright Act and the Lanham Act. Count I seeks an issuance of a declaratory judgment; Count II alleges copyright infringement; and Count III alleges federal unfair competition. Presently pending before the Court is: Eddie Murphy Productions, Inc.; Will Vinton Studios, Inc.; Touchstone Television Productions, LLC; Fox Broadcasting Company, Inc.; and Time Warner Entertainment Company, L.P.'s (hereinafter "Defendants") Motion to Dismiss D. Murphy's Complaint. In his response to Defendants' Motion to Dismiss, Plaintiff voluntarily withdrew his causes of actions under Counts I and III. Accordingly, only Count II of Plaintiff's Complaint is addressed.

**BACKGROUND**

A reading of D. Murphy's Complaint supports the following summary of the alleged conduct of the parties.

D. Murphy was raised in the Robert Taylor Homes, a building in the Chicago Housing Authority Projects. Beginning in mid-1997, D. Murphy, a documentary film maker and owner of Keep It Real Movie Production, decided to film the lives of individuals in the projects, specifically those in the Robert Taylor Homes, Stateway Gardens, and the Ida B. Wells Apartments. D. Murphy filmed individuals who lived or once lived in the projects, scenery, buildings, signs, traffic intersections, personal home scenes, and family gatherings at his late mother's home. Furthermore, D. Murphy filmed specific individuals ,including Tally Collier, a man who used a voice box to speak; Derrick Pittman, a heavy set child with a chubby face; Lester Jackson, a skinny middle-aged man; Theoada Griffin, a middle-aged woman; Walter Hale, a middle-aged man; and Kate Murphy Foster, the late mother of D. Murphy. During all of his filming, D. Murphy also made references to himself and referred to himself as "Daryl Murphy, Keep It Real Movie Production."

After months of filming and interviewing, D. Murphy finished his documentary and applied for the registration of copyright. On or about April 18, 1998, D. Murphy proposed an idea for a show to Oprah Winfrey based on his documentary of the projects. D. Murphy wrote Oprah a letter explaining the importance of his documentary; and along with the letter, he mailed to her, by certified mail, a videotape of his documentary and his business card. Shortly thereafter, D. Murphy received a green card confirming receipt of his package. After receiving confirmation, D. Murphy heard nothing from Oprah, any representative connected with her organization, or any individuals specifically mentioned in his letter to her. In his letter to Oprah, D. Murphy asked her to pass his

documentary onto Spike Lee, Tom Hanks, Quincy Jones, Ron Howard, or Fred Williamson. None of these individuals contacted D. Murphy in regards to his documentary.

Approximately nine months after D. Murphy contacted Oprah about his documentary, a new television program called "The PJs" aired in all major and minor television markets throughout the United States. The television program appeared on Fox, Channel 32 in Chicago, Illinois. PJs was a cartoon, set in an urban housing project fictitiously named Hilton-Jacobs, whose purpose was to show life in the projects. PJs was created by Eddie Murphy, Larry Wilmore, and Steve Tompkins. In addition, Quincy Jones was involved in the creation of PJs. Eddie Murphy, Larry Wilmore, Steve Tompkins, Ron Howard and Brian Grazer were all executive producers. PJs aired from January of 1999 through the 2001 television season. Based on its success, PJs received two or more Emmy Awards and was nominated for other Emmy Awards, including Outstanding Animated Program, Outstanding Main Title Theme Music, and for the episode "He's Gotta Have It."

According to D. Murphy, the similarities between his documentary and PJs are far too numerous and personal to be mere coincidence. For instance, D. Murphy alleges that the scenic footage from his documentary was used in PJs. In addition, D. Murphy alleges that there were three or more individuals from his documentary used as models for characters in PJs. D. Murphy alleges that the facts from the lives of certain people filmed in his documentary were so similar to the characters in PJs that the creators and producers of PJs could not have known, imagined, or thought these facts up independently. For example, the character Sanchez in PJs closely resembles Tally Collier, an individual who appeared in D. Murphy's documentary. Both Tally Collier and the character Sanchez use a voice box to speak, their wives are deceased, they have similar head-neck placement, dark eyebrows, jowled cheeks, similar noses, gestures and similar built. Furthermore,

D. Murphy alleges that the creators and producers of PJs used or paraphrased direct verbal remarks stated or implied in his documentary. The likenesses and the scenery in PJs are so identifiable to his documentary that he has been stopped by many people in the Chicago Housing Authority Projects because they believe he is a part of, or involved with, the PJs and has profited from the television program.

D. Murphy alleges that his documentary was passed on to one or more of the persons listed in his letter to Oprah, thereby providing access to the creators and executive producers of PJs. These individuals involved in the creation and production of PJs received, possessed, and took control of his documentary; used portions of his documentary for their benefit; and improperly realized profits, gains, and advantages from his documentary. Those involved in the creation and production of PJs never notified, gave credit to, acknowledged, or obtained permission from him in regards to the use of his documentary. D. Murphy never gave verbal or written permission for his work to be used in any medium, for any purpose, by anyone, or any entity.

## ANALYSIS

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A plaintiff is not required to plead the facts or the elements of a claim, with the exception found in Federal Rules of Civil Procedure 9. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002) (*Swierkiewicz*); *Walker v. Thompson*, 288 F.3d 761, 764 (7th Cir. 2002). A filing under Federal Rules of Civil Procedure need not contain all the facts that will be necessary to prevail. It should be "short and plain," and it suffices if it notifies the defendant of the principal events. *See Hoskins v. Poelstra*, 320 F.3d 761,

764 (7th Cir. 2003). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize the facts, consistent with the complaint that would make out a claim." *Graehling v. Village of Lombard, Ill*, 58 F.3d 295, 297 (7th Cir. 1995). The simplified notice pleading relies upon liberal discovery and summary of motions to define disputed issues and facts and to dispose of unmeritorious claims. *See Swierkiewicz*, 534 U.S. at 513.

The Defendants argue that the Plaintiff has not alleged infringement of any copyrightable elements of his documentary.

A claim of copyright infringement involves two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Fiest Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991) (*Fiest*). "Copying may be inferred where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work." *Gentieu v. Tony Stone Images*, 255 F. Supp. 2d 838, 847 (N. D. Ill. 2003) (*Gentieu*). "Proof of access can be established by demonstrating that the creators of the allegedly infringing works had the opportunity to view the protected item." *Gentieu*, 255 F. Supp. 2d at 847. In addition, "access can be established by evidence that the copyrighted work was sent to a close associate of the defendant or that the material was widely disseminated." *Gentieu*, 255 F. Supp. 2d at 847-848. In copyright infringement cases, substantial similarity is determined by the "ordinary observer test: whether the accused work is so similar to the plaintiff's

work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Gentieu*, 255 F. Supp. 2d at 848.

Copyright extends to "original works of authorship." 17 U.S.C. § 102(a). However, there can be no copyright in facts. *Fiest*, 499 U.S. at 356 (emphasizing that § 102(b) of the Copyright Act of 1976 is "universally understood to prohibit any copyright in facts"). "[A]ll facts - scientific, historical, biographical, and news of the day . . . may not be copyrighted and are part of the public domain available to every person." *Fiest*, 499 U.S. at 348. A compilation of facts, on the other hand, "is not copyrightable *per se*, but is copyrightable only if its facts have been 'selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.'" *Fiest*, 499 U.S. at 356 (quoting the definition of compilation in § 101 of the 1976 Copyright Act). However, "[e]ven a compilation that is copyrightable receives only limited protection, for the copyright does not extend to facts contained in the compilation." *Fiest*, 499 U.S. at 359 (emphasizing that §103 of the 1976 Copyright Act makes clear that the "facts contained in existing works may be freely copied because copyright protects only the elements that owe their origin to the compiler - the selection, coordination, and arrangement of facts").

The Defendants argue that the Plaintiff's copyright infringement claim should be dismissed because factual elements cannot be copyrighted. For instance, the Defendants argue that there is no copyright protection for facts taken from the lives of various individuals and no protection for the portrayal of buildings and scenery used in the Plaintiff's documentary. As the court in *Fiest* emphasized, "[F]acts do not owe their origin to an act of authorship. The distinction is one between creation and discovery. The first person to find and report a particular fact has not created the fact;

he or she has merely discovered its existence." *Fiest*, 499 U.S. at 347. Taking images and facts from real-life people and places and then recasting those images and facts into a cartoon does not support a claim for copyright infringement. Regardless of how original the Plaintiff claims his documentary is, the facts it exposes are "free for the taking." *Fiest*, 499 U.S. at 349. "The very same facts and ideas may be divorced from the context imposed by the author, and restated or reshuffled by second comers, even if the author was the first to discover the facts or to propose the ideas." *Fiest*, 499 U.S. at 349. Therefore, the Defendants were free to use the facts contained in the Plaintiff's documentary.

However, the Plaintiff contends that his documentary is more than a compilation of facts. He argues that his documentary is copyrightable because it was independently created by him and the documentary possesses some minimal degree of creativity. The Plaintiff asserts that he can establish that the Defendants had access to his copyrighted work and that there are substantial similarities which exist between his documentary and the PJs. Although the facts themselves are not copyrightable, the Plaintiff's selection, coordination, and arrangement of those facts are copyrightable. Because the Plaintiff may be able to prove that the Defendants copied the actual selection, coordination, and arrangement of the facts in his documentary, Count II sufficiently pleads a copyright cause of action.

The Defendants argue that the statute of limitations either bars or significantly limits the Plaintiff's claims against them. In addition, the Defendants argue that the Plaintiff's claim must be limited to acts that occurred during the three years preceding the filing of his complaint.

Under the Copyright Act of 1976, "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). The Plaintiff filed suit on May 19, 2004. The last episode of PJs aired on or about May 20, 2001.

According to the Defendants, the Plaintiff can only recover for acts that occurred on or after May 19, 2001. The Plaintiff asserts that he is entitled to bring up acts that occurred prior to May 19, 2001, because of the "continuing violation" rule. Under the continuing violation rule, the statute of limitations does not begin to run on a continuing wrong until the wrongful conduct is finished. *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983). The Plaintiff alleges that the Defendants' infringement was a continuing wrong, beginning in early 1999 and continued until the last broadcast. The Plaintiff further alleges that the Defendants' infringement may continue today because PJs is still being aired in Canada and Great Britain.

The Defendants argue that the continuing violation rule does not apply to the Plaintiff's suit against them. The continuing violation rule does not apply when "the harm is definite and discoverable, and nothing prevented the plaintiff from coming forward and seeking redress" at an earlier time. *Wilson v. Gieson*, 956 F.2d 738, 743 (7th Cir. 1992); *Moskowitz v. Trustees of Purdue University*, 5 F.3d 279, 282 (7th Cir. 1993); *Stone v. Williams*, 970 F.2d 1043, 1050 (2d Cir. 1992) (emphasizing that the application of the continuous violation rule "generally has been rejected in the [copyright] infringement context").

As set out above, Plaintiff has sufficiently pled a cause of action for infringement. The factual question of the applicability of the continuing violation doctrine and what proofs Plaintiff may present is premature.

## CONCLUSION

For the foregoing reasons, Counts I and III are voluntarily withdrawn by Plaintiff. The Defendants' Motion to Dismiss is denied.

Dated: November 18, 2004

JOHN W. DARRAH
United States District Judge